CHARLES E. GREGORY *v.* CARLETON L. BRETT, JR.

SUPERIOR COURT        LITCHFIELD COUNTY        FILE No. 16262

Memorandum filed July 18, 1961

*Ells, Quinlan & Mead,* of Winsted, for the plaintiff.

*Roraback & Swing,* of Canaan, for the defendant.

MacDonald, J. By lease dated August 30, 1958, plaintiff rented from defendant certain premises, on Undermountain Road in the town of Salisbury consisting of three-quarters of an acre of land on which were located a house, with adjoining shed, and a barn. By the terms of the lease, plaintiff had a term of five years for which he was to pay $600 per year except that "[t]he second year's rent of $600 is waived in consideration of the installation . . . of a forced hot air heating system with an oil burner, and for other minor repairs which the Lessee undertakes . . . and that all such improvements shall become a part of the premises including the heating system, and shall be surrendered to the Lessor upon the termination of this lease."

Plaintiff-lessee paid the $600 first year's rent in advance, entered into possession as of September 1, 1958, and installed a heating system and made certain other improvements at a cost to plaintiff of between $1800 and $1900. Plaintiff used the premises from time to time until April 16, 1959, when a fire occurred which rendered the premises untenantable, as admitted by paragraph 3 of the defendant's answer and as clearly indicated by the testimony of Clark and, indeed, by defendant's photographs. Plaintiff did not thereafter use the premises, moved out his belongings, had certain discussions with the defendant, and on June 29, 1959, wrote defendant's counsel that he had decided "not to undertake attempting to repair the house." Since defendant-lessor did not repair the house either, it remained untenantable and was not again occupied by plaintiff, who has now sued to recover (1.), on the first count, the rent paid in advance for that period of the two years paid for during which

he could not use the premises, and (2), on the second count, the moneys expended by him to install the heating system, on the theory of unjust enrichment of defendant.

Defendant, in his answer, interposed three special defenses, which survived a demurrer thereto, namely (1) that plaintiff had never surrendered the premises to defendant, (2) that the improvements were, by the lease, to be surrendered to defendant upon termination of the lease; and (3) that plaintiff negligently burned the premises and refused to repair them. Defendant also filed a cross complaint for $25,000 damages based upon the damage claimed to have been caused by plaintiff's negligence. Although plaintiff himself was not on the premises at the time of the fire, they were then being used by one Ballister, a friend of plaintiff, to whom plaintiff had given a key and permission to use the premises in return for "keeping an eye on the place." The fire occurred shortly after Ballister had burned some papers in a metal oil drum or barrel located about six feet from the barn.

To dispose of defendant's cross complaint for damages and fourth special defense at the outset, it cannot be found from the evidence that the fire was caused by Ballister's negligence, whether or not he was plaintiff's agent, and whether the burden was on plaintiff to establish freedom from negligence or on the defendant to prove its existence. In passing, the court is of the opinion that Ballister was in fact the agent of plaintiff, under *Alfred Fox Piano Co.* v. *Bennett,* 96 Conn. 448; *Burwell* v. *Neumann,* 130 Conn. 117, and Restatement (Second), 1 Agency § 8, so that any negligence on the part of Ballister would be imputed to plaintiff. *Maisenbacker* v. *Society Concordia,* 71 Conn. 369. However, Ballister's course of conduct on the day of the fire, as brought out by his testimony as adduced by

plaintiff, did not indicate any negligence on his part, and defendant's evidence in support of his cross complaint, as adduced from the testimony of Parsons, the fire chief, neither established with reasonable certainty just how or where the fire started nor contradicted the testimony of Ballister as to his use of due care. Although negligence can be established by a chain of circumstantial evidence, as pointed out in *Weidlich* v. *New York, N.H. & H.R. Co.*, 93 Conn. 438, it would require pure speculation to pin the blame for this fire on any negligence of Ballister from the evidence submitted.

With respect to plaintiff's claim under the first count of his complaint, it would appear that he is entitled to recover rent paid in advance for that portion of term thus paid for during which the premises were untenantable. Under § 47-24 of the General Statutes, payments of rent are suspended when the premises are "so injured as to be unfit for occupancy . . . so long as such tenement is untenantable." As earlier indicated, the premises were clearly untenantable after the fire of April 16, 1959, but defendant argues that the statute provides no authority for recovering rent paid in advance, citing some New York authorities. However, plaintiff's claim is supported by *Mandel* v. *Berman,* 7 Conn. Sup. 32, 33, where the court, *Quinlan, J.,* states: "Under the statute, to save the tenant from liability for rent, it must appear that it has become unfit for occupancy 'without his fault or neglect.' The present complaint so alleges. Assuming that can be proved the plaintiff seeks to go beyond the statute and recover for rent paid in advance. The statute in terms does not authorize this, but certainly the purpose of the statute was to avoid the harshness of the common law, and to that extent enunciates a policy of fairness and justice. With this policy in mind as part justification, and the decision of

*Anderson* v. *Yaworski,* 120 Conn. 390, as further assistance, it is conceivable that our Supreme Court would recognize the theory of failure of consideration."

The court agrees that "the purpose of the statute was to avoid the harshness of the common law" and that our Supreme Court might well recognize the theory of failure of consideration under the present set of facts, in line with its decision in *Anderson* v. *Yaworski,* 120 Conn. 390, 400, where the majority opinion states: "The finding of the trial court that the burning of the dwelling-house upon the property had brought about a substantial failure of consideration is, for all practicable purposes, the equivalent of a finding that after the fire the defendant was no longer able substantially to perform the contract. The plaintiff was therefore entitled to treat it as discharged. The contract being discharged, the provision in it that if the plaintiff failed to make the further payments agreed upon he should forfeit the money paid in pursuance of it falls with the rest of it. He has paid a part of the purchase price but has received no benefit under the contract. He is therefore entitled to recover the sums so paid from the defendant. *Thompson* v. *Gould,* 37 Mass. (20 Pick.) 134, 142; *Wilson* v. *Clark,* 60 N.H. 352; 3 Williston, Contracts, § 1974. The trial court was correct in giving judgment for the plaintiff upon both the complaint and the counterclaim."

As to defendant's defense to this claim, that plaintiff had failed to surrender possession, the statute cited above provides that "in case of such injury, he [tenant] may quit possession of such tenement," and the fact that plaintiff never occupied the premises after the fire, removed his belongings therefrom and notified defendant in writing of his refusal to repair constituted a surrender and abandonment of the premises sufficient to restore posses-

sion to defendant. See *Miller* v. *Benton,* 55 Conn. 529, 546; 32 Am. Jur. 765, § 905.

Defendant's defense that plaintiff caused the damage to the premises by his own negligence already has been disposed of, and this leaves only his second special defense, that the improvements made by plaintiff, including the heating system, became a part of the premises to be surrendered to defendant upon termination of the lease. With this defense, the court agrees in so far as it affects the amount of damages to be recovered by plaintiff. It may well be that defendant was "unduly enriched" to the extent that the amounts expended by plaintiff on improvements of the premises exceeded $600, the second year's rent—but this was a calculated risk that plaintiff took in exceeding that amount. The lease, in effect, substituted the installation of the heating unit for $600 cash, and to that extent, alone, plaintiff is entitled to recover the consideration paid in advance for the second year of his occupancy. Beyond that, he took his chances on being able to enjoy five years' use and enjoyment of the improvements—a use and enjoyment which might have been terminated before the full term of five years by plaintiff's death, his failure to pay subsequent rent, or other circumstances under which he could not have recovered because of the express terms of the lease. He should recover only the rent provided for in the lease and paid by him in advance, either by cash or the substitute expressly provided for, for that portion of the two years covered during which the premises were untenantable, namely, $225 for the period from April 16, 1959, to August 30, 1959, plus $600 for the second year, ending August 30, 1960.

The issues are found for the plaintiff on the first count of his complaint to recover of defendant the sum of $825 plus his taxable costs. The issues are

found for the defendant on the second count of the complaint and for the plaintiff on defendant's cross complaint, and judgment may enter accordingly.