WILLIAM F. WENTWORTH *vs.* THE L. & L. DINING COMPANY, INCORPORATED (SAMUEL E. HOYT, RECEIVER).

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued December 9th, 1932—decided March 14th, 1933.

*Samuel E. Hoyt,* for the appellant (receiver).

*David L. Daggett* and *Arnon D. Thomas,* for the appellee (The J. G. Brill Company).

HAINES, J. The receiver disallowed the claim of The J. G. Brill Company of Pennsylvania against The L. & L. Dining Company for $5153.05, and the matter was thereafter submitted to the court upon an agreed statement of facts. After hearing the parties, the court allowed the claim and the receiver appealed. The finding of facts discloses that the Brill Company sold a dining car with certain equipment to the Dining Company, on June 24th, 1929, on a conditional bill of sale, for $11,000, by the terms of which $1000 was paid at once by the Dining Company and its notes were delivered to the Brill Company for the balance, being thirty-two notes payable one each month with interest. It was also provided that the car was to be located on a plot of land in Milford leased from Jennie L. Burkhardt. The bill of sale was recorded in the town clerk's office in Milford July 5th, 1929, and the car was delivered and placed on the plot July 9th. The receiver for the Dining Company was appointed September 27th, 1929, and he was made permanent receiver October 18th. The bill of sale provided that upon failure to pay any note at maturity, all the remaining notes should at once become due and payable. On November 5th the note due October 1st was paid by the receiver under the authority of the court, together with interest and insurance as provided in the bill of sale. On that date appraisers fixed the value of the car and equipment with the lease of land, at $15,093.37, and determined the amount still due the Brill Company to be $9790, thus showing an equity of $5303.37. Thereafter the receiver paid the notes due November 1st, December 1st, January 1st and February 1st in succession with the interest charges thereon. Under order of court the receiver, on December 2d, at public auction, sold the dining car and its equipment and lease, for $12,500 to George R. Webb, subject to all the rights

of the Brill Company as defined in the conditional bill of sale. On March 25th the Brill Company made demand upon Webb for the amount due it on the conditional bill of sale, but payment was refused, whereupon the Brill Company brought a writ of replevin and obtained possession of the car, and by another writ against a third party, obtained certain of the equipment thereof. On or about April 1st, the Brill Company sold the car and equipment at public auction for $5000 to the Wason Manufacturing Company, a subsidiary of the Brill Company. At this time the claim of the Brill Company under the conditional bill of sale, amounted to $10,153.05, upon which it credited the amount received at the auction sale, leaving the balance of its claim $5153.05. At the hearing in the Superior Court, the receiver contested this claim of $5153.05 on the grounds that, as receiver, he was not bound by the conditional bill of sale to the Dining Company; that that document was not recorded in the town which the statute required; and that, having elected to proceed under the bill of sale and take over the car, the Brill Company was estopped from now making claim for this balance, but the court overruled these contentions and allowed the claim. The argument and brief of the receiver in this court are confined to two general propositions, viz.: that the conditional bill of sale was not binding upon the receiver because it was not recorded in New Haven, and that the Brill Company had elected to proceed to take over the property under the terms of the bill of sale and so was estopped from making the present claim for a balance due.

The articles of incorporation of the Dining Company state that its principal place of business is in the city of New Haven, but the bill of sale was recorded in Milford where the car was located upon delivery to

the Dining Company. The receiver cites Public Acts of 1927, Chapter 153, now General Statutes, § 4697, which provides that "all contracts for the sale of personal property, conditioned that the title thereto shall remain in the vendor after delivery, shall be in writing . . . and filed within a reasonable time in the town clerk's office in the town where the vendee resides; but the provisions of this section shall not apply to household furniture, musical instruments, phonographs, phonograph supplies, radios, bicycles or property exempt from attachment and execution." He urges that this dining car not being within the exception of this statute, the record in Milford rather than in New Haven, did not bind him. But Public Acts of 1927, Chapter 277, which was passed after Chapter 153, provided that "any contract for the sale of a portable garage or other portable building, . . . conditioned that the title thereto shall remain in the vendor after delivery, shall be in writing . . . and filed within a reasonable time in the office of the town clerk in the town where the real estate upon which such articles are placed is situated." Though it is not found as a fact that this car was a "portable building" within the meaning of this statute, the trial court treats it as a fact, and we find no difficulty in holding it to be within the meaning and intent of that term as used in the statute; such a dining car is a building designed to be moved from place to place at the will of the owner, and therefore having the character of a portable building. The photographs in evidence and referred to in the finding show it to be portable in fact, standing on its wheels ready for removal, and the contract also shows it was treated as personal property and not a part of the realty on which it might stand. It was provided that it should not be moved from its stated location in the town of Milford save by written consent,

and it is found that it was transported to and placed on this leased land at the time of delivery to the Dining Company. Both Chapter 153, governing conditional sales generally, and Chapter 277, providing specially for portable buildings, were operative, and passed in succession at the same term of the General Assembly. In such a situation we have said that if one of two enactments is special and particular and clearly includes the matter in controversy, whilst the other is general and would, if standing alone, include it also, and if the inclusion of that matter in the general enactment would produce a conflict between it and the special provisions, it must be taken that the latter were designed as an exception to the general provisions. *Kelly* v. *Dewey,* 111 Conn. 281, 292, 293, 149 Atl. 840; *Kepner* v. *United States,* 195 U. S. 100, 24 Sup. Ct. 797; Endlich, Interpretation of Statutes, pp. 288, 289, § 216; 2 Lewis' Sutherland Statutory Construction (2d Ed.) pp. 744, 745, § 387, and p. 661, § 346. We hold, therefore, that at the time the contract was made—June 24th, 1929—it was subject to the provisions of Chapter 277 of the Public Acts of 1927, and it was then only necessary to record the contract in Milford within a reasonable time, to render the conditional sale good as against all the world. It was in fact recorded July 5th, 1929, which the trial court properly held to be within a reasonable time. *National Cash Register Co.* v. *Lesko,* 77 Conn. 276, 58 Atl. 967.

However, on July 1st, 1929, four days before the record was made, Chapter 218 of the Public Acts of 1929 became operative, repealing and superseding Chapter 277 of the Public Acts of 1927, and providing that "all conditional sales of personal property not made in conformity with the provisions of section 4744 of the General Statutes as amended by section one of Chapter 116 of the Public Acts of 1921 and by Chapter

153 of the Public Acts of 1927, and all conditional sales of personal property which, at the time of such sale or thereafter, shall be so attached to any real estate as to appear to be a fixture, or to form a part of such real estate, shall be held to be absolute sales except as between the vendor and the vendee and their personal representatives. . . ." The question thus presented is whether the recording of the present contract is governed by the statutes in force when the contract was made or by the last statute to which we have referred. Under the former, the record in Milford would render the contract a valid conditional sale as against all the world, while under the latter, it would only be good as such, between the parties and their personal representatives.

The intent of the statute is controlling. The presumption is that this last statute was intended to control all contracts of conditional sale made from and after July first. The preceding statutes prescribed all the terms of a valid conditional sale contract, including the manner and place of record. All these provisions were essential attributes of such a contract and of equal operative purpose and effect, and it cannot be presumed that the last statute was intended to relate back to any feature of contracts already entered into by the parties in accordance with the then existing statutory law. To hold that the last statute controlled a contract previously made under the former, would vitally alter and impair the rights and obligations for which the parties bargained, and give the last statute a retroactive effect. There is always a strong presumption against such an intent, and the statute in question gives no indication that it had such a purpose. *Humphrey* v. *Gerard,* 83 Conn. 346, 352, 77 Atl. 65; *Atwood* v. *Buckingham,* 78 Conn. 423, 426, 62 Atl. 616; *State ex rel. Judson* v. *County Commissioners,* 68 Conn. 16,

24, 35 Atl. 801; *Middletown* v. *New York, N. H. & H. R. Co.*, 62 Conn. 492, 497, 27 Atl. 119. It follows that this contract was a valid conditional sale as against the receiver and all others.

No question is raised as to the right of the Brill Company to retake the car from Webb and sell it at auction and credit the proceeds upon its claim against the estate of the Dining Company; nor is any question made as to the validity of the various items which make up the balance now claimed to be due. A reading of the contract shows that the Brill Company is claiming nothing different from or inconsistent with its rights thereunder. Paragraph four defines the rights and obligations of the parties in the event that a receiver is appointed for the Dining Company, and the course provided has been followed by the Brill Company. Therein "the vendee promises and agrees to pay the balance forthwith." The present claim is made under the terms of the contract and there can be no estoppel against the Brill Company under these circumstances. We therefore hold its bill of $5153.05 to be a valid claim against the estate of the Dining Company in the hands of the receiver, which was properly allowed by the trial court.

There is no error.

In this opinion the other judges concurred.